[Cite as *In re T.B.*, 2013-Ohio-74.]

**[Please see nunc pro tunc opinion at 2013-Ohio-1156.]**

COURT OF APPEALS
RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  |
|---|---|
| IN RE: | JUDGES:<br>Hon. Patricia A. Delaney, P. J.<br>Hon. William B. Hoffman, J.<br>Hon. Sheila G. Farmer, J. |
| T.B., K.B., and N.B. | Case Nos. 12CA89, 12CA90, 12CA91 |
| MINOR CHILDREN | O P I N I O N |

| | |
|---|---|
| CHARACTER OF PROCEEDING: | Civil Appeal from the Court of Common Pleas, Juvenile Division, Case Nos. 2008-DEP-00177, 2008-DEP-00178, 2008-DEP-00179 |
| JUDGMENT: | Affirmed |
| DATE OF JUDGMENT ENTRY: | January 10, 2013 |
| APPEARANCES: | |

| For Appellee RCCS | For Appellant Mother |
|---|---|
| J. PETER STEFANIUK<br>731 Scholl Road<br>Mansfield, Ohio 44907 | DAWN FESMIER PIGG<br>28 Park Avenue West, Suite 501<br>Mansfield, Ohio 44902 |

*Wise, J.*

{¶1} Appellant Paula Timko appeals the decision of the Court of Common Pleas, Juvenile Division, Richland County, which granted permanent custody of her three children to Appellee Richland County Children Services ("RCCS"). The relevant facts leading to this appeal are as follows.

{¶2} The children at the center of this case are T.B., born to Appellant Paula Timko in 2002; K.B., born to Appellant Paula Timko in 2004; and N.B., born to Appellant Paula Timko in 2006. The father of all three children is Anthony Bishop, who has separately appealed.

{¶3} In September 2008, RCCS filed a complaint alleging that appellant's aforesaid three children were dependent under R.C. 2151.04. In December 2008, the trial court adjudicated T.B., K.B., and N.B. as dependent children, with a disposition of protective supervision by RCCS. The concerns at various points in the case have included appellant's mental health and anger issues, her substance abuse, her criminal activities, lack of suitable housing, and exposure of the children to men with domestic violence propensities. It is undisputed that appellant has a felony drug possession conviction, for which she served prison time.

{¶4} On November 10, 2009, RCCS obtained temporary custody of T.B., K.B., and N.B. pursuant to an emergency shelter care order, following acts of domestic violence by Anthony Bishop against appellant in the home. Bishop was subsequently convicted on three felony counts stemming from the incident and was sentenced to three years in prison.

{¶5} On July 8, 2010, pursuant to a magistrate's decision, the children were again placed in the temporary custody of RCCS. The magistrate's decision was approved by the trial court on July 28, 2010.

{¶6} On January 13, 2011, RCCS filed a dispositional motion requesting permanent custody of all three children to the agency.

{¶7} Evidentiary hearings on the permanent custody motion were conducted before a magistrate on several days between May 3, 2011 and March 1, 2012. The magistrate issued a decision recommending permanent custody of the children to RCCS on March 14, 2012.

{¶8} Both sides thereupon filed objections to the decision of the magistrate. On August 16, 2012, the trial court overruled the objections and approved and adopted the magistrate's decision.

{¶9} Appellant Paula Timko filed a notice of appeal on September 10, 2012. She herein raises the following five Assignments of Error in each case:

{¶10} "I. THE COURT ERRED IN FINDING THAT APPELLANT HAD ABANDONED THE CHILD DUE TO HER LACK OF CONTACT OR VISITATION, THUS FAILING TO MEET THE REQUIREMENTS OF R.C. 2151.414(B) TO JUSTIFY A GRANT OF PERMANENT CUSTODY.

{¶11} "II. THE COURT'S DECISION TO GRANT PERMANENT CUSTODY OF THE CHILD TO RICHLAND COUNTY CHILDREN SERVICES WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND WAS NOT IN THE CHILD'S BEST INTEREST.

**{¶12}** "III. THE COURT ERRED IN FINDING THAT THE MOTHER HAD CONTINUOUSLY AND REPEATEDLY FAILED TO SUBSTANTIALLY REMEDY THE CONDITIONS WHICH CAUSED HER CHILD TO BE PLACED OUTSIDE HER HOME, PURSUANT TO R.C. 2151.414(E), IN VIEW OF THE EVIDENCE THAT MOTHER DID SUBSTANTIALLY COMPLY WITH ALL REQUIREMENTS OF THE CASE PLAN.

**{¶13}** "IV. THE COURT ERRED IN DETERMINING THAT THE CHILD HAD BEEN OUT OF THE HOME FOR 12 OUT OF 22 MONTHS, PURSUANT TO R.C. 2151.413.

**{¶14}** "V. THE COURT ERRED IN FINDING THAT IT IS IN THE BEST INTEREST OF THE MINOR CHILD TO BE PLACED IN THE PERMANENT CUSTODY OF CHILDREN SERVICES, PURSUANT TO R.C. 2151.414(D)."

<em>Standard of Review</em>

**{¶15}** As an appellate court, we are not fact finders; we neither weigh the evidence nor judge the credibility of witnesses. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base his or her judgment. *Cross Truck v. Jeffries* (Feb. 10, 1982), Stark App.No. CA–5758. Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. *C.E. Morris Co. v. Foley Construction* (1978), 54 Ohio St.2d 279, 376 N.E.2d 578. The Ohio Supreme Court has emphasized: " '[I]n determining whether the judgment below is manifestly against the weight of the evidence, every reasonable intendment and every reasonable presumption must be made in favor of the judgment and the finding of facts. * * *.' " *Eastley v. Volkman,* 132 Ohio St.3d 328, 334,

972 N.E.2d 517, 2012–Ohio–2179, quoting *Seasons Coal Co., Inc. v. Cleveland* (1984), 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984), fn. 3, quoting 5 Ohio Jurisprudence 3d, Appellate Review, Section 603, at 191–192 (1978). Furthermore, it is well-established that the trial court is in the best position to determine the credibility of witnesses. See, e.g., *In re Brown,* Summit App.No. 21004, 2002–Ohio–3405, ¶ 9, citing *State v. DeHass* (1967), 10 Ohio St .2d 230, 227 N.E.2d 212.

I.

**{¶16}** In her First Assignment of Error, appellant contends the trial court erred in finding that she had abandoned T.B., N.B., and K.B. pursuant to the permanent custody statute. We disagree.

**{¶17}** R.C. 2151.414(B)(1) reads as follows: "Except as provided in division (B)(2) of this section, the court may grant permanent custody of a child to a movant if the court determines at the hearing held pursuant to division (A) of this section, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody and that any of the following apply:

**{¶18}** " ***

**{¶19}** "(b) The child is abandoned.

**{¶20}** " ***."

**{¶21}** We have reviewed the record and hereby conclude the court's R.C. 2151.414(B)(1)(b) "abandonment" finding was not against the manifest weight of the evidence, as the transcript supports the conclusion that appellant failed to communicate or visit with her children for a period of ninety days or more. See R.C. 2151.011(C). The

children's foster mother testified that appellant moved to Columbus, Ohio, for a period of time and had no contact with the children from early March, 2010 to June 22, 2010, although she did contact the foster mother once by telephone, at which time the children were not with the foster mother. See Tr. at 473-474.  This testimony was buttressed by one of the caseworkers, Amanda Campbell, and the guardian ad litem, Nancy Edwards. Appellant's present protestation that this was "because of circumstances beyond Mother's control" (Appellant's Brief at 11) is not persuasive to this Court.

**{¶22}**  Appellant's First Assignment of Error is overruled.

II., III.

**{¶23}**  In her Second and Third Assignments of Error, appellant contends the trial court's decision to grant permanent custody of her three children to RCCS, including the court's determination that appellant had continuously and repeatedly failed to substantially remedy the conditions which caused her children to be placed outside her home, was against the manifest weight of the evidence. We disagree.

**{¶24}**  As an initial matter, as discussed above, the trial court found the children had been abandoned pursuant to R.C. 2151.414(B)(1)(b). There was thus no requirement for any R.C. 2151.414(B)(1)(a) determinations (*see infra*), based on the court's finding of abandonment. *See, e.g., In re Willis,* Coshocton App.No. 02CA15, 2002-Ohio-6795, ¶ 30. However, the trial court chose to engage in the full statutory analysis, and we will review these issues in the interest of justice.

**{¶25}**  R.C. 2151.414(B)(1) reads as follows: "Except as provided in division (B)(2) of this section, the court may grant permanent custody of a child to a movant if the court determines at the hearing held pursuant to division (A) of this section, by clear

and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody and that any of the following apply:

{¶26} "(a) The child is not abandoned or orphaned, has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, * * * and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.

{¶27} "(b) The child is abandoned.

{¶28} "(c) The child is orphaned, and there are no relatives of the child who are able to take permanent custody.

{¶29} "(d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period * * *."

{¶30} In determining whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents (see R.C. 2151.414(B)(1)(a), supra), a trial court is to consider the existence of one or more factors under R.C. 2151.414(E), including whether or not "[f]ollowing the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those

conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties." See R.C. 2151.414(E)(1).

**{¶31}** At the permanent custody hearings in this matter, the magistrate heard testimony from at least eighteen witnesses, including appellant herself. A summary of the pertinent testimony is as follows:

### James Hollenbach

**{¶32}** James Grant Hollenbach, M.A., testified in his capacity as T.B.'s counselor. Hollenbach provided a diagnostic assessment of T.B., age nine, as suffering from post-traumatic stress disorder. He has witnessed domestic violence, suffered nightmares, and was described initially as "on-edge" and hyper vigilant. Hollenbach described the counseling sessions as productive.

### Amanda Gillespie

**{¶33}** Amanda Gillespie, a counselor in training through Family Life Counseling, also worked with T.B. In addition to some of the issues described by Hollenbach, Gillespie noted that T.B. had behavioral issues with fighting in school. She noted that some of T.B.'s issues escalated at one point after inadvertent contact with appellant following a school wrestling match. He thereupon had trouble sleeping at his foster placement because of his fear that "somebody was going to take him away." Tr. at 67. Overall, she described his relationship with his foster parents as appearing to be positive.

## Melissa Gerkin

**{¶34}** Melissa Gerkin, L.I.S.W., also a counselor through Family Life, discussed her work with K.B. and N.B. Both girls are described as "very bright." Tr. at 118. She noted that K.B. has been diagnosed with adjustment disorder, with anxiety. N.B. has been diagnosed with adjustment disorder, with anxiety and behavioral concerns. She has also experienced nightmares of "my daddy killing my mommy." Tr. at 113. Gerkin was able to reduce her sessions to every other week because of K.B.'s and N.B.'s improvement. She agreed that the consistency in their foster placement has had a positive effect on both girls' behaviors. Tr. at 131.

## Michael Ream

**{¶35}** Michael Ream is the principal at the school T.B. has attended since September 2010. He described T.B. as academically bright and improving, but with a history of behavioral issues, including outbursts of anger and speaking disrespectfully to teachers and school authorities. Ream noted that T.B.'s behavior was improving in structured settings, although in April 2011 T.B. was suspended for ten days for punching another student. In addition, another student was using an MP3 player to pass messages back and forth between T.B. and appellant.

## Brandy Berry

**{¶36}** Brandy Berry, a former ongoing services worker for RCCS, noted that the agency was first contacted about appellant's situation in 2002, via a courtesy request from Franklin County, Ohio. Another request came from Florida in 2005; authorities there had removed T.B. due to substance use concerns in the home in 2003 or 2004, although reunification had been accomplished in that instance. Berry also stated that

Anthony Bishop had been arrested for domestic violence in 2005, but Berry was unsure of the victim's identity. Berry tried to arrange voluntary counseling for the family, but appellant did not cooperate and the case was closed in 2007. Berry also investigated a sexual abuse concern regarding N.B. in April 2010. It was concluded as unsubstantiated as to appellant, but indicated as to an undetermined male. Tr. at 221.

### Holly Hartman

**{¶37}** RCCS supervisor Holly Hartman was working as an intake investigator for the agency in November 2006, when a referral was made regarding domestic violence concerns. At that time, appellant admitted that Bishop had beaten her. Also, T.B. reported that he had witnessed the incident. Hartman also investigated a child endangering concern in September 2008, when K.B. was hit by a car in the street. This is part of what led to the court's 2008 protective supervision orders.

### Heather Swanson

**{¶38}** Heather Swanson, an intake investigator for RCCS, recalled looking into a physical abuse concern regarding T.B. in 2008, when he was observed with a lighter burn on his leg. When she visited appellant's home, "it was the worst that [she had] ever been threatened in eight years" of working for RCCS. Tr. at 269.

### Amanda Campbell

**{¶39}** Amanda Campbell, a placement social worker for RCCS, testified as the present worker on the case, to which she was assigned in March 2010. Campbell brought in several drug screen reports on appellant, including a positive test for cocaine in April 2011. Campbell also noted that appellant did not visit with or contact the children between March 1, 2010 and June 22, 2010. Campbell told the court that appellant has

not maintained stable housing and has disrupted visitations at the agency with angry outbursts in front of the children.

### Andrea Spencer and Ken Spencer

**{¶40}** The foster parents, Ken and Andrea Spencer, both testified at the permanent custody proceedings. Andrea confirmed that appellant did not contact the children from March 8, 2010 until June 29, 2010. Andrea also stated that appellant called her on August 7, 2010, and told her to "watch her back." Ken recalled an incident in April 2011 where an unidentified male approached him and advised him to "take care of the kids," warning him several times that he was "real good friends" with appellant, which Ken took as a threat. Tr. at 590.

### Larry Schacherer

**{¶41}** Mansfield Police Officer Larry Schacherer testified to an incident on June 12, 2011 where appellant and her brother allegedly made threats against two persons, and said they would burn down their house on Hill Avenue. One of the two persons may have been in a past relationship with appellant's brother. No charges resulted in this incident.

### Jason Bammann

**{¶42}** Mansfield Police Officer Jason Bammann testified to a disturbance call on June 29, 2011 on Johns Avenue. On that date, appellant was allegedly present during an incident where appellant's brother broke a window on a female subject's automobile.

### Michael Napier

**{¶43}** Mansfield Police Officer Michael Napier recalled an incident on June 30, 2011 where appellant was observed driving a car with Theodoric Pointer as a

passenger. Appellant allegedly tried to evade a traffic stop and was charged with misdemeanor fleeing and eluding.

### Nancy Edwards, GAL

**{¶44}** The guardian ad litem, Nancy Edwards, testified extensively regarding her participation in the case. She described her first contact with appellant at a supervised visit, at which time appellant "made a scene in the lobby," causing the children to be upset. Tr. at 669. Edwards opined that appellant's case plan objectives had not been satisfied. Tr. at 679. She alo stated her conclusion that appellant has failed to keep her children safe. Tr. at 680. She further reported that the children love their mother, but they wish to remain in their present placement. Tr. at 682, 686.

### Appellant Paula Timko

**{¶45}** In her testimony, appellant recalled that she has been a domestic violence victim at least ten times. She admitted to her problems with outbursts and hostility. Tr. at 816, 899, 907. She also admitted to her past drug use (Tr. at 831) and exposing her children to dangerous situations. She nonetheless testified: "I feel like the last two years everything that has brought before you in this Court were out of my control. Maybe not everything, but 90% of everything was, was out of my control. I worked my case plan. I did my counseling. I got drug and alcohol assessments, numerous of them. I got my MMPI evaluation. I, I visited with my kids every visit that I could other than when I was incarcerated."

**{¶46}** Tr. at 817.

<u>Jodi Hurlow</u>

**{¶47}** Jodi Harlow, a counselor at Family Life Counseling, testified as a witness for appellant. She recalled that appellant has consistently wanted to get her children back. Hurlow described her as "always consistently very cooperative with me." Tr. at 365. She has seen appellant make progress on her anger management and housing issues. Tr. at 376, 380.

<u>Conclusion</u>

**{¶48}** Upon review of the above witnesses and the record, we hold the trial court did not err in determining that T.B., K.B., and N.B. could not be placed with appellant or Anthony Bishop within a reasonable time or should not be placed with appellant or Bishop. See R.C. 2151.414(B)(1)(a).

**{¶49}** Appellant's Second and Third Assignments of Error are overruled.

IV.

**{¶50}** In her Fourth Assignment of Error, appellant contends the trial court erred in relying on the "twelve of twenty-two" rule under R.C. 2151.414(B)(1)(d), *supra*.[1] We disagree.

**{¶51}** One of the alternative criteria under R.C. 2151.414(B)(1)(d) is whether "[t]he child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period * * *."

**{¶52}** The latter part of R.C. 2151.414(B)(1)(d) further states as follows:

---

[1] The text of appellant's assigned error actually references R.C. 2151.413(D)(1), which posits the "twelve of twenty-two" rule in regard to when a children services agency must file for permanent custody. In her argument, however, she duly recites R.C. 2151.414(B)(1)(d).

**{¶53}** "For the purposes of division (B)(1) of this section, a child shall be considered to have entered the temporary custody of an agency on the earlier of the date the child is adjudicated pursuant to section 2151.28 of the Revised Code or the date that is sixty days after the removal of the child from home."

**{¶54}** Although the case plan in the matter sub judice was approved on November 20, 2008, the trial court relied on the most recent removal date of November 10, 2009 as the starting point for purposes of R.C. 2151.414(B)(1)(d). Sixty days from that date was January 9, 2010. The agency thus waited more than twelve months, specifically until January 13, 2011, to file its motion for permanent custody. During at least that twelve-month period, the children were in agency custody. We therefore find proper compliance with the "twelve of twenty-two rule," and we find no merit in appellant's assertion that only "full" months count toward the total.

**{¶55}** Appellant's Fourth Assignment of Error is overruled.

V.

**{¶56}** In her Fifth Assignment of Error, appellant contends the trial court erred in finding permanent custody to be in the best interest of the children. We disagree.

**{¶57}** In addressing the best interest issue, we first note it is well-established that "[t]he discretion which the juvenile court enjoys in determining whether an order of permanent custody is in the best interest of a child should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned." *In re Mauzy Children* (Nov. 13, 2000), Stark App.No. 2000CA00244, quoting *In re Awkal* (1994), 95 Ohio App.3d 309, 316, 642 N.E.2d 424.

{¶58} In determining the best interest of a child for purposes of permanent custody disposition, the trial court is required to consider the factors contained in R.C. 2151.414(D). These factors are as follows:

{¶59} "(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster care givers and out-of-home providers, and any other person who may significantly affect the child;

{¶60} "(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;

{¶61} "(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period * * *;

{¶62} "(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;

{¶63} "(5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child."

{¶64} In the case sub judice, we find RCCS has afforded appellant significant opportunities and services to allow appellant to address the numerous issues in her life as a parent. Upon review of the testimony of the witnesses as set forth previously, the record, and the findings of fact and conclusions of law therein, we conclude the trial court's grant of permanent custody of T.B., K.B., and N.B. to RCCS was made in the

consideration of their best interests and did not constitute an error or an abuse of discretion.

**{¶65}** Appellant's Fifth Assignment of Error is overruled.

**{¶66}** For the foregoing reasons, the judgment of the Court of Common Pleas, Juvenile Division, Richland County, Ohio, is hereby affirmed.

By: Farmer, J.

Delaney, P. J., and

Hoffman, J., concur.

_____

_____

_____

                                           JUDGES

SGF/d 1227

IN THE COURT OF APPEALS FOR RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| IN RE: | : | |
| | : | |
| T.B., K.B., and N.B. | : | JUDGMENT ENTRY |
| | : | |
| MINOR CHILDREN | : | Case Nos. 12CA89, 12CA90 and 12CA91 |

For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas, Juvenile Division, Richland County, Ohio, is affirmed.

Costs assessed to appellant.

_____

_____

_____

JUDGES